**Kevin Gillen and Mark A. English**
**Deputy Yellowstone County Attorneys**
**Yellowstone County Courthouse, Room 701**
**P.O. Box 35025**
**Billings, Montana 59107-5025**
**(406) 256-2870**

**Attorney for Jay Bell, Seth Weston, Dennis McCave,**
**Timothy Neiter, Pam Wong, Carolyn Pluhar, Jason Valdez,**
**Linda Butke, Janine Miller-Allen and Garrett Peterson**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MONTANA**
**BILLINGS DIVISION**

| | |
|---|---|
| JASON PAUL INDRELAND, ) | |
| ) | Cause No. CV 08-47-BLG-RFC-CSO |
| Plaintiff, ) | |
| ) | **YELLOWSTONE COUNTY'S** |
| vs. ) | **BRIEF IN SUPPORT OF** |
| ) | **MOTION FOR SUMMARY** |
| ) | **JUDGMENT** |
| YELLOWSTONE COUNTY ) | |
| BOARD OF COUNTY ) | |
| COMMISSIONERS et al, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

## Introduction

Jason Paul Indreland filed an amended complaint. The Court found the amended complaint alleged a cause of action against various Yellowstone County officials, the County. The amended complaint alleged that the County violated

Indreland's right to freedom of religion and his right to safety while incarcerated in the Yellowstone County Detention Facility. The County denied the allegations in the amended complaint. The County filed a motion for summary judgment. The County files this brief in support of the motion.

## Standard for Summary Judgment Motion

A court should grant a motion for summary judgment when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Rule 56(C), Fed.R.Civ.P. Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 91 L.Ed.2d 202, 106 S.Ct. 2505 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id*. The moving party for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits that demonstrate the absence of a genuine issue of material fact. S*ee Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 91 L.Ed.2d 265, 106 S.Ct. 2548 (1986). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Id*. On an issue where the nonmoving party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id*. Once the moving party meets its initial

burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial." Rule 56(e), Fed.R.Civ.P. If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." *Id*. The standard to grant a motion for summary judgment is similar to the standard for a directed verdict (now known as a judgment as a matter of law) under Rule 50(a) of the Federal Rules of Civil Procedure. *Anderson* at 250.

## Summary of Facts

*General*

On March 24, 2007, officers from the Billings Police Department arrested Jason Paul Indreland on suspicion of felony criminal possession of dangerous drugs with intent to distribute and placed him in the Yellowstone County Detention Facility. He did not post bail. He remained incarcerated in the Facility. On March 30, 2007, the State of Montana charged him with felony criminal possession of dangerous drugs with intent to distribute. On April 5, 2007, the State petitioned the state district court to revoke a previous suspended sentence for felony theft. On May 2, 2008, pursuant to a plea agreement, he pled guilty to felony criminal possession of dangerous drugs and admitted to the probation violation. On July 1, 2008, the state district court sentenced him to five years incarceration in the Montana State Prison with two years suspended for the drug possession and two

years incarceration in the Montana State Prison for the probation violation to run consecutively with the drug possession sentence. On July 20, 2008, officers from the Yellowstone County Sheriff's Office transported him to the Montana State Prison. The Facility detained him from March 24, 2007 until July 10, 2008.

*Medallion*

On March 24, 2007, Brandon Gatlin, a staff member of the Facility, processed Indreland into the Facility. Gatlin did not allow Indreland to have a medallion in the Facility. Gatlin does not remember processing Indreland into the Facility or that he did not allow him to have a medallion. According to Gatlin, he would not allow a medallion if it was too large or the chain on the medallion was too strong. The medallion could not be large enough to be used as a weapon. The medallion could not be large enough to be used like a rock to strike someone. The chain on the medallion could not be strong enough to be used like a rope to strangle someone. Based on a description of the medallion as the number 666 with dimensions of less than an inch and a half tall and less than an inch and a half wide, according to Gatlin, it was small enough to be allowed in the Facility. Gatlin believes the only reason he would not have allowed the medallion would have been the strength of the chain.

Indreland wrote several kites and complaints in which he requested the Facility provide him with the medallion. The Facility responded that he could not

have the medallion because the chain on the medallion was too thick. What the Facility really meant was the chain was too strong. It could potentially be used as a weapon to strangle someone. The Facility advised him that he could have the medallion with a thinner, weaker chain. Indreland never acquired a thinner, weaker chain for the medallion. The Facility never allowed him to have the medallion. The Facility did not allow Indreland to have the medallion because of any religious significance of the medallion, but because of the strength of the chain on the medallion. If Indreland had placed a thinner chain on the medallion, he could have had it in the Facility.

*Satanic Bible*

In March or April of 2007, Indreland orally requested Sam Kinser, the Chaplain at the Facility, provide him with a Satanic Bible. Kinser refused to provide Indreland with the Satanic Bible. Indreland did not request anyone else at the Facility to provide him with the Satanic Bible. Indreland did not attempt to have the Satanic Bible shipped to him from an outside source such as Barnes and Noble or Amazon. Kinser is an independent contractor at the Facility. He is not an employee of the Facility.

*Religious Greeting Cards*

The Facility has no records that Indreland was ever provided religious greeting cards by the Facility or that Indreland ever complained about being

provided religious greeting cards by the Facility. Indreland claims that three times between April 1, 2007 and May 15, 2007, the Facility provided him with religious greeting cards during the regular distribution of mail to detainees. According to Indreland, Joseph Stutz, a staff member with the Facility, delivered the cards on two of the occasions and he was unsure who delivered the third card. Stutz remembers delivering mail to Indreland during regular mail distribution, but does not remember him ever receiving any religious greeting cards or complaining about receiving any religious greeting cards.

*Segregation*

From March 23, 2007 until June 13, 2007, Indreland was in the general population of the Facility. On June 12, 2007, Indreland assaulted another detainee, Sky Stamper. On June 13, 2007, Indreland was placed in a segregation unit for 14 days because of the assault. On June 27, 2007, after Indreland had served his 14 days in the segregation unit, he was released from the segregation unit and placed in the general population of the Facility. On October 14, 2007, Indreland assaulted another detainee, Robert Walls. On October 15, 2007, Indreland was placed in a segregation unit for 30 days because of the assault on Walls. On November 15, 2007, after Indreland had served his 30 days in the segregation unit, he refused to be placed back into the general population. The Facility attempted several times to place Indreland back into the general population of the Facility, but each time he

refused. From June 13, 2007 until June 27, 2007 and from October 15, 2007 until November 15, 2007, the Facility required Indreland to stay in a segregation unit because he had assaulted other detainees. From November 15, 2007 until July 10, 2008, Indreland decided to stay in the segregation unit. The Facility did not require him to stay in a segregation unit. The Facility did not place or require Indreland to stay in a segregation unit because of his religion.

*Safety*

On August 18, 2007, the Facility placed Indreland in the same cell as Robert Walls. Prior and during the placement, the Facility had no knowledge of any animosity by Indreland towards Walls. Neither Indreland nor Walls' file indicated any animosity by Indreland towards Walls. Neither Indreland nor Walls complained either orally or in writing of any animosity by Indreland towards Walls. Indreland did not display any animosity towards Walls. On October 14, 2007, Indreland assaulted Walls in the cell. During the disciplinary hearing, Indreland admitted he assaulted Walls because he thought Walls was disrespectful and irritating. After the assault, the Facility placed a note in Indreland's file that he was not to be placed in the same unit as Walls. On March 11, 2008, Indreland wrote a note to the Facility that he orally complained to the Facility about his placement in the same cell with Walls prior to his assault on Walls. The Facility did not place Indreland in a situation that threatened his safety. Indreland was not victimized by his cellmate; to

the contrary, Indreland victimized his cellmate.  Indreland was more of a potential threat to the safety of the others in the Facility than others were a potential threat to his safety.

## Applicable Law

*1983*

Under 42 U.S.C. § 1983, a person can be held liable for the violation of another person's constitutional right when he acts under color of law and the act causes a violation of the other person's constitutional right. *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50, 119 S. Ct. 977, 143 L. Ed. 2d 130 (1999); *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988).

A municipality can be held liable for the violation of a person's constitutional right when an employee of the municipality acts under color of law pursuant to a municipal policy causes a violation of a person's constitutional right. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694-5, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). A municipality cannot be held liable for the violation of a person's constitutional right simply because its employee violates a person's constitutional right. *Id*.

When a plaintiff files a complaint against a defendant in his personal-capacity, the plaintiff has sought to impose personal liability upon the defendant for the actions he took under color of state law. *Hafer v. Melo*, 502 U.S. 21, 112 S. Ct. 358, 116 L. Ed. 2d 301 (1991); *Kentucky v. Graham*, 473 U.S. 159, 105 S. Ct. 3099,

87 L. Ed. 2d 114 (1985). When a plaintiff files a complaint against a defendant in his official-capacity, the plaintiff has sought to impose liability upon the municipality that employs the defendant for the action the defendant took under color of state law. *Id*. A personal-capacity claim seeks damages against the defendant. *Id*. An official-capacity claim seeks damages against the municipality that employs the defendant. *Id*. An official-capacity claim is another way to plead a cause of action against a municipality. *Id*. With a personal-capacity claim, a plaintiff must prove the defendant acted under color of law and the act caused a violation of his constitutional right. *Id*. The plaintiff must prove the elements of individual liability. *Id*. With an official-capacity claim, a plaintiff must prove the defendant acted under color of law pursuant to a policy of the municipality and the act violated his constitutional right. *Id*. The plaintiff must prove the elements of municipal liability. *Id*.

   *Freedom of Religion*

Pursuant to the First Amendment of the United States Constitution, a prisoner has the right to freedom of religion. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348, 107 S. Ct. 2400, 96 L. Ed. 2d 282 (1987). A prisoner cannot be forced to practice a particular religion or prohibited from the practice of a particular religion. A prison can regulate a particular religious practice of a prisoner if it is reasonably related to a legitimate penal interest. *Id*. A court should consider four factors when

it decides whether a prison regulation is reasonably related to a legitimate penal interest: (1) whether there is a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it; (2) whether there are alternative means of exercising the right that remain open to prison inmates; (3) whether accommodation of the asserted constitutional right will impact guards and other inmates, and on the allocation of prison resources generally; and (4) whether there is an absence of ready alternatives versus the existence of obvious, easy alternatives.  *Turner v. Safley*, 482 U.S. 78, 89-90, 107 S. Ct. 2254, 96 L. Ed. 2d 64 (1987); *Shakur v. Schriro*, 514 F.3d 878, 883-84 (9th Cir. Ariz. 2008).  The standard a prison must comply with pursuant to the First Amendment is lenient.  A prison only has to prove some reasonable penal reason for a regulation that interferes with a particular religious practice.  *Turner v. Safley*, 482 U.S. 78, 88, 107 S. Ct. 2254, 96 L. Ed. 2d 64 (1987).  The reasonable basis test is used.  *See Shakur v. Schriro*, 514 F.3d 878, 888 (9th Cir. Ariz. 2008).  The First Amendment only protects those religious practices central to a religion, ancillary practices are not protected.  *Freeman v. Arpaio*, 125 F.3d 732, 737 (9th Cir. Ariz. 1997); *Contra Shakur v. Schriro*, 514 F.3d 878, 88-85 (9th Cir. Ariz. 2008); *Alvarez v. Hill*, 518 F.3d 1152, 1157 footnote 3 (9th Cir. Or. 2008) (sincere religious beliefs are protected, not just those practices central to a religion).

Pursuant to the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), a prison can regulate a particular religious practice of a prisoner only if it furthers a compelling government interest and uses the least restrictive means to further the compelling government interest.  42 USC § 2000CC-1(A).  The standard a prison must comply with pursuant to RLUIPA is strict.  A prison must prove it has a compelling reason for a regulation that interferes with a particular religious practice and the regulation is the least restrictive means to achieve the compelling interest.  *Alvarez v. Hill*, 518 F.3d 1152 (9th Cir. Or. 2008); *Shakur v. Schriro*, 514 F.3d 878, 888-891 (9th Cir. Ariz. 2008); *Greene v. Solano County Jail*, 513 F.3d 982 (9th Cir. Cal. 2008); *Warsoldier v. Woodford*, 418 F.3d 989 (9th Cir. Cal. 2005); The Impact of People in Prison: The Religious Land Use and Institutionalized Persons Act of 2000, 45 Tenn. 25 (2009).  The strict scrutiny test is used.  42 USC § 2000CC-1(A).  RLUIPA protects all religious practices whether central or ancillary to a religion.  42 USC § 2000CC-5(7)(A).  If a prison regulation satisfies the RLUIPA standard, it will also satisfy the First Amendment standard.

*Right to Safety*

Pursuant to the Eight Amendment to the United States Constitution, a prisoner has a right to safety while in prison.  *Farmer v. Brennan*, 511 U.S. 825, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994).  A prison must take reasonable measures to ensure a prisoner does not attack another prisoner.  *Id*.  A prison does not have to

take extraordinary measures to ensure a prisoner does not attack another prisoner, only reasonable measures. *Id*. If a prison takes reasonable measures to ensure a prisoner does not attack another prisoner and a prisoner does attack another prisoner, the prison does not violate the attacked prisoner's right to safety while in prison. *Id*. A prison violates a prisoner's right to safety when it is deliberately indifferent to the prisoner's right to safety. *Id*. A prison is deliberately indifferent to the prisoner's right to safety when it knows that a prisoner faces a substantial risk of serious attack and disregards that risk by its failure to take reasonable measures to prevent the attack. *Id*. A prison must be aware of the facts from which the inference could be drawn that the prisoner faces a substantial risk of attack and actually draw the inference. *Id*. It is not enough that the prison should have known of that a prisoner faces a substantial risk of serious attack. *Id*. It must actually know. *Id*. It is subjective, not objective, as to the prison's knowledge of substantial risk of serious attack. *Id*.

A prisoner who has not been convicted of a crime has the same right to safety as a prisoner who has been convicted of a crime. *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. Ariz. 1998). The only difference is where the right is derived from. *Id*. The right to safety for a convicted prisoner derives from the Eight Amendment of the United States Constitution and the right to safety for a prisoner who has not been convicted derives from the Fourth Amendment of the United States

Constitution. *Id.* Except for where the right derives from it is the same right. *Id.* A court should use the same analysis to determine whether a prisoner's right to safety has been violated regardless of whether the prisoner has or has not been convicted of a crime. *Id.*

## Analysis

*Medallion*

The County did not allow Indreland to have the medallion while in the Facility. The County did not allow him to have the medallion because of the strength and thickness of the chain. If Indreland had placed a weaker and thinner chain on the medallion he could have had the medallion in the Facility. The County did not prohibit the medallion because of any religious significance of the medallion. The County had a compelling reason not to allow detainees to have chains that are strong and thick enough that they can be used to strangle someone. It protects the safety of everyone in the Facility. The County used the least restrictive means to achieve its goal to protect the safety of everyone in the Facility. It did not completely ban chains. It only banned those chains strong and thick enough to be used to strangle someone. It allowed detainees to have chains that are weak and thin enough that they cannot be used to strangle a person. The restriction on the strength and thickness of a chain served a valid interest. It ensures the safety of detainees

and those people in the Facility.  The County did not violate Indreland's right to freedom of religion when it did not allow him to have the medallion.

*Satanic Bible*

Sam Kinser, an independent contractor who provides chaplain services to the Facility, did not provide Indreland with a Satanic Bible.  Indreland never requested an employee of the Facility provide him with a Satanic Bible.  The County did not refuse to provide Indreland with a Satanic Bible.

Even if Kinser did not provide Indreland with a Satanic Bible is considered an action by the County, the County had a compelling reason not to allow detainees to have a Satanic Bible, the safety of those in the Facility.  A Satanic Bible advocates violence, manipulation, disregard for authority and revenge.  These ideas are contrary to the operation of a safe detention facility.  The Facility used the least restrictive means to achieve its goal to protect the safety of everyone in the Facility. The Facility does not promote the attributes associated with those practices.

The County did not violate Indreland's right to freedom of religion when Kinser did not provide him with a Satanic Bible.

*Religious Greeting Cards*

The County did not provide Indreland with religious greeting cards. According to Indreland, the County provided him with religious greeting cards that he found offensive.  There simply is no evidence to support Indreland's contention

that the County provided him with religious greeting cards. The County did not violate Indreland's right to freedom of religion when it allegedly provided him with religious greeting cards. The County did not provide the religious greeting cards.

*Segregation*

The County did place Indreland in segregation. The County placed him in segregation because he was involved in confrontations with other detainees. The County did not place him in segregation because of his religion. After his second stint in segregation, Indreland refused to be moved back into the general population of the Facility. The Facility allowed him to stay in segregation. It did not want him to have another confrontation with another detainee to be placed back into segregation. The County did not violate Indreland's right to freedom of religion when it placed him in segregation.

*Safety*

The County did not place Indreland in a dangerous situation that jeopardized his safety. Indreland attacked his cellmate because he found his cellmate annoying. Indreland's cellmate did not attack him. After Indreland attacked his cellmate, the County did not allow Indreland to be in the same unit of the Facility as his cellmate. Even if Indreland's cellmate had attacked him, the County would not be responsible. Prior to the attack, the County had no knowledge of any animosity between Indreland and his cellmate. Neither Indreland nor his cellmate's file indicated any

animosity between them. Neither Indreland nor his cellmate ever complained orally or in writing as to any animosity between them. Neither Indreland nor his cellmate displayed any animosity between them. The County did not place Indreland in a cell with a cellmate who posed a danger to him. Indreland initiated the confrontation with his cellmate. The County did not violate Indreland's right to safety when it placed him in a cell with a cellmate that Indreland chose to attack.

## Conclusion

The Court should grant the County's motion for summary judgment. There is no genuine issue of material fact and the County is entitled to judgment as a matter of law. The County did not violate Indreland's right to freedom of religion or his right to safety while incarcerated in the Yellowstone County Detention Facility. The County did not allow Indreland to have a medallion while in the Detention Facility. The County did not allow him to have the medallion because of the strength and thickness of the chain, not the religious significance of the medallion. The County did not refuse to provide Indreland with the Satanic Bible. Kinser refused to provide him with the Satanic Bible. The County did not provide Indreland with religious greeting cards. There is no evidence the County provided him with religious greeting cards. The County did place Indreland in segregation. The County placed him in segregation because he assaulted other detainees, not because of his religious beliefs. The County did not place Indreland in dangerous

situations. Indreland assaulted his cellmate because he found him annoying. Indreland's cellmate did not assault him.

Dated this 6<u>th</u> day of November 2009.

<u>/s/ Kevin Gillen</u><br>
Kevin Gillen<br>
Deputy Yellowstone County Attorney

## CERTIFICATE OF COMPLIANCE

Pursuant to Civil Local Rule 7.2(d)(2), I certify that this brief is printed with proportionately spaced Times New Roman text typeface of 14 points; is double spaced; and the word count calculated by Word 2007 is 3,780 words, not averaging more than 280 words per page, excluding Certificate of Service and Certificate of Compliance.

Dated this 6th day of November 2009.

> /s/ Kevin Gillen
> Kevin Gillen
> Deputy Yellowstone County Attorney

## CERTIFICATE OF SERVICE

I certify that on the date below I served a copy of the attached Yellowstone County's Brief in Support of Motion for Summary Judgment on the following people by the following means:

__1, 3__ CM/ECF
_____ Hand Delivery
__2___ Mail
_____ Overnight Delivery Service
_____ Fax
_____ E-mail

1.  Clerk, U.S. District Court

2.  Jason Paul Indreland
    #A042564
    Crossroads Correctional Center
    50 Crossroads Drive
    Shelby, MT 59474
    *Pro se Plaintiff*

3.  Harlan B. Krogh
    Crist, Krogh & Nord, LLC
    The Securities Building
    2708 First Avenue North, Suite 300
    Billings, MT  59101
    *Attorneys for Defendant Chaplain Sam Kinser*

    Dated this 6th day of November 2009.


                                        /s/ Kevin Gillen
                                        Kevin Gillen
                                        Deputy Yellowstone County Attorney