Harlan B. Krogh
CRIST, KROGH & NORD, LLC
The Securities Building
2708 First Avenue North, Suite 300
Billings, MT 59101
Tel. (406) 255-0400
Fax: (406) 255-0697
E-mail: hkrogh@cristlaw.com

    Attorneys for Defendant Chaplain Sam Kinser

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| JASON PAUL INDRELAND,<br><br>Plaintiff,<br><br>-vs-<br><br>YELLOWSTONE COUNTY BOARD OF COMMISSIONERS, et al., | Cause No. CV-08-47-BLG-RFC-CSO<br><br>**DEFENDANT CHAPLAIN SAM KINSER'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |

## I. INTRODUCTION

As permitted by the Court's Order of January 12, 2010, *Doc.*#66, Defendant Chaplain Sam Kinser ("Kinser") submits his supplemental brief in support of his motion for summary judgment as well as his supporting affidavit. At the heart of this matter is Plaintiff's request for a "Satanic Bible" for religious purposes and whether

1

that text conflicts with the legitimate penological concerns of the Defendants. It does, and Plaintiff's Complaint should be dismissed.

## II. THE SATANIC BIBLE AND PENOLOGICAL CONCERNS

Chaplain Kinser is familiar with the Satanic Bible and some of its themes. These themes include the promotion of vengeance, self-gratification, the killing of individuals who Satanists believe "deserve" to be killed, symbolic destruction of victims, living according to individual desires without regard for conscience or consequences, and rebellion against law. Aff. Chaplain Sam Kinser ¶2 (Feb. __, 2010) attached as ex. "A". While Chaplain Kinser does not make policy for the Yellowstone County Detention Facility or Yellowstone County, the themes of the Satanic Bible are at odds with what he has seen as the security and rehabilitation of incarcerated inmates. Id. at ¶3.

With respect to not being able to access the Satanic Bible, Kinser's understanding is that Indreland wanted YCDF to acquire it for him, that is, he was not willing to pay for it. Id. at ¶4. Chaplain Kinser is unaware as to whether Indreland tried to acquire the Satanic Bible on his own, however, not having the Satanic Bible physically in his possession would not have kept Indreland from exercising his religious beliefs, since he certainly could have prayed or meditated on his beliefs without the text. Id. at ¶5.

As highlighted by Chaplain Kinser's affidavit and the Court's decision in Burton v. Frank, 2004 WL 1176171 (W.D.Wis. 2004), the Satanic Bible is at odds with the security and rehabilitation of incarcerated inmates. In that regard, the Court stated as follows:

> According to the "Nine Satanic Statements," which are contained on page 25 of Anton Szandor LeVey's book, "Satan represents indulgence, instead of abstinence!" "Satan represents vengeance, instead of turning the other cheek!" "Satan represents man as just another animal, sometimes better, more often worse than those that walk on all-fours, who, because of his 'divine spiritual and intellectual development,' has become the most vicious animal of all!" and "Satan represents all of the so-called since, as they all lead to physical, mental or emotional gratification!" LeVey states that right and wrong have long been inverted. The following are additional passages from *The Satanic Bible:*
>
> The strongest instinct in every living thing is self-preservation, which brings us to the last of the seven deadly sins-anger. Is it not our instinct for self-preservation that is aroused when someone harms us, when we become angry enough to protect ourselves from further attack? A Satanist practices the motto, "If a man smite thee on one cheek, *smash* him on the other!" Let no wrong go undressed. Be as a lion in the path-be dangerous even in defeat!"
>
> The only time a Satanist would perform a human sacrifice would be if it were to serve a two-fold purpose: that being to release the magician's wrath in the throwing of a curse, and more important, to dispose of a totally obnoxious and deserving individual.
>
> In the case of a curse or destruction ritual, it sometimes helps the magician if his desires are intensified by other members of the group. There is nothing in this type of ceremony which would lead to embarrassment on the part of those conducting a ritual of

> this sort, since anger and the symbolic destruction of the intended victim are the essential ingredients.
>
> To insure the destruction of an enemy, you must destroy them by proxy! They must be shot, stabbed, sickened, burned, smashed, drowned, or rent in the most vividly convincing manner! It is easy to see why the religions of the right hand path frown upon the creation of "graven images." The imagery used by the sorcerer is a working mechanism for the material reality, which is totally opposed to esoteric spirituality.
>
> Behold! The mighty voices of my vengeance smash the stillness of the air and stand as monoliths of wrath upon a plan of writhing serpents. I am become as a monstrous machine of annihilation to the festering fragments of the body of he who would detain me.
>
> It repenteth me not that my summons doth ride upon the blasting winds which multiply the sting of my bitterness; And great black slimy shapes shall rise from brackish pits and vomit forth their pestilence into his puny brain.
>
> I call upon the messengers of doom to slash with grim delight this victim I hath chosen. Silent is that voiceless bird that feeds upon the brain-pulp of him who hath tormented me and the agony of the is to be [sic] shall sustain itself in shrieks of pain, only to serve as signals of warning to those who would resent my being.

Burton at 1-2. Other courts have also found that the Satanic Bible is contrary to penological interests. See McCorkle v. W.E. Johnson, 881 F.2d 993, 995-996 (11 Cir. 1989); Childs v. Duckworth, 509 F.Supp. 1254, 1263 (N.D.Ind. 1981) aff'd 705 F.2d 915 (7th Cir. 1983). In McCorkle, it was stated:

> [t]he premise underlying all of the teachings in *The Satanic Bible* is that life should be lived according to individual desires without regard for conscience or consequences. Certain portions of the

>book are somewhat harsher. For instance, in the chapter entitled "The Book of Satan," author Anton Szandor LaVey states that right and wrong have been inverted too long. He challenges readers to rebel against the laws of man and God. Furthermore, LaVey declares that hatred of ones enemies is of utmost importance; revenge should be a top priority.
>
>Clearly, practices such as those described above, and the beliefs that encourage them, cannot be tolerated in a prison environment since they pose security threats and are directly contrary to the goals of the institution. Allowing the plaintiff access to the requested books and medallion would only encourage such behavior. Thus, it cannot be said that the policy in question is arbitrary; rather, it is logically connected to the governmental interests asserted.

Id.; see also Hendrickson v. Caruso, 2008 WL 623788 *7-8 (W.D.Mich. 2008) citing Carpenter v. Wilkinson, 946 F.Supp. 522, 529-30 (N.D.Ohio 1996); McCorkle at 995-96; Burton v. Frank at *4-6; Doty v. Lewis, 995 F.Supp. 1081 (D.Ariz.1998).

The case of Winford v. Frank, 2008 WL 359728 (E.D.Wis. 2008) is instructive on this point. In that case, the plaintiff brought an action under Section 1983 claiming that the defendants violated his rights under the First Amendment when they denied him several books including the Satanic Bible. Id. at 1-2. When the plaintiff asked that he be provided with certain publications, including the Satanic Bible, he was informed that his books would need to be approved by the Chaplain before he could take possession of them. Id. at 3. The Chaplain reviewed the books the plaintiff requested to determine if they were appropriate and, rather than specifically denying the plaintiff

5

his books, forwarded them to security and to the Inmate Complaint Examiner to aide in the investigation. Id. at 4. Ultimately, the Chaplain and other prison officials determined that the publications were not appropriate for distribution. Id. Additionally, the Chaplain met with the plaintiff to tell him that he could not advocate practicing Satanism. Id.

The court in Winford began its analysis by noting that Section 1983 does not create a claim based on collective or vicarious responsibility. Id. at 4; citing Pacelli v. De Vito, 972 F.2d 871, 875 (7th Cir. 1992). The court also noted that, as a prisoner, an individual retains those First Amendment rights that are not inconsistent with his status as a prisoner or the legitimate penological objectives of the correctional system. Winford at 5; citing Pell v. Procuniler, 417 U.S. 817, 822 (1974). The court noted that it was undisputed that the plaintiff was a Satanist and that he was denied several religious books. Winford, at 6. However, the plaintiff presented no evidence showing he was unable to practice Satanism without the benefit of these publications. Id.

In Winford, the defendant demonstrated there was a legitimate state interest in preventing the plaintiff from possessing certain texts, including the Satanic Bible, because it teaches its adherence to disobey authority. Id. at 6. The court found that such materials jeopardized the safety and security of the institution, staff and other inmates. Id. Based upon the foregoing, plaintiff's motion to amend his complaint was

Case 1:08-cv-00047-RFC-CSO   Document 71   Filed 02/25/10   Page 7 of 10

denied and the defendant's motion for summary judgment was granted and the case dismissed. Id. at 9.

Plaintiff Indreland cannot create a genuine issue of material fact with respect to the content of the Satanic Bible. Therefore, the question really comes whether the Satanic Bible is contrary to the penological concerns of the Yellowstone County Detention Facility. The answer to that question, in light of the contents of the Satanic Bible and the Affidavit of Chaplain Kinser, has to be that the Satanic Bible is in conflict with the legitimate penological concerns of the Defendants. Vengeance, self-gratification, the killing of individuals who Satanists believe "deserve" to be killed, the symbolic destruction of victims, and living according to the individual desires without regard to for conscience or consequences, as well as rebellion against the law, are all directly contrary to the desired goals of incarceration which is the rehabilitation of the individual and preparing him to be a productive member of society.

### III.   CONCLUSION

For the reasons set forth above, Kinser respectfully requests that the Court grant his Motion for Summary Judgment.

7

DATED this 25th day of February, 2010.

                                CRIST, KROGH & NORD, LLC

                         By:   /s/ Harlan B. Krogh
                                HARLAN B. KROGH
                                2708 First Avenue North, Suite 300
                                Billings, MT 59101

                        Attorney for Defendant Chaplain Sam Kinser

## Certificate of Compliance Pursuant to Local Rule 7.1(d)(2) for Case Number CV-04-108-BLG-RFC

I certify that pursuant to Local Rule 7.1(d)(2), the attached Supplemental Brief in Support is proportionately spaced, has a typeface of 14 points or more and contains 1,613 words.

By: /s/ Harlan B. Krogh
Harlan B. Krogh

Attorneys for Defendant Chaplain Sam Kinser

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 25th day of February, 2010, a copy of the foregoing document was served on the following persons by the following means:

| | |
|---|---|
| __1, 3__ | CM/ECF |
| _____ | Hand Delivery |
| __2__ | Mail |
| _____ | Overnight Delivery Service |
| _____ | Fax |
| _____ | Email |

1. Clerk, U.S. District Court

2. Jason Paul Indreland
   AO #042564
   Crossroads Correctional Center
   50 Crossroads Drive
   Shelby, MT 59474
   *Pro se Plaintiff*

3. Kevin Gillen
   Mark A. English
   Yellowstone County Attorney
   Yellowstone County Courthouse, Room 701
   P.O. Box 35025
   Billings, Montana 59107-5025
   kgillen@co.yellowstone.mt.gov

                                                By:   /s/ Harlan B. Krogh
                                                      Harlan B. Krogh
                                                      Crist, Krogh & Nord, LLC
                                                      Attorney for Defendant Chaplain Sam Kinser